# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-1325V
Filed: March 13, 2024

|  |  |
|---|---|
| JANICE WALKER,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Special Master Horner |

*Danielle Anne Strait, Maglio Christopher & Toale, Seattle, WA, for petitioner.*
*Jennifer A. Shah, U.S. Department of Justice, Washington, DC, for respondent.*

### FINDING OF FACT[1]

On May 6, 2021, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012),[2] alleging that she suffered injuries to her left upper extremity, inclusive of both a shoulder injury and cellulitis affecting the arm, resulting from her February 12, 2020 influenza ("flu") vaccination. (ECF No. 1.) On January 10, 2024, petitioner moved for a Finding of Fact that her flu vaccination was administered in her affected (left) shoulder. (ECF No. 52.) For the reasons set forth below, I conclude that petitioner has demonstrated by preponderant evidence that the vaccination at issue was administered in her left shoulder.

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

1

I. **Procedural History**

This case was initially assigned to the Special Processing Unit ("SPU") but was reassigned to the undersigned on April 24, 2023. (ECF Nos. 20, 22, 40, 42.) Petitioner has filed medical records, declarations, and photographs, marked as Exhibits 1-31. She has also filed a medical article by Hesse et al., marked as Exhibit 32. (ECF No. 51.) Pertinent to the arguments raised below, petitioner initially filed medical records including an immunization record from "Main Street – CFH" that did not include an injection site for the vaccination at issue. (ECF No. 7; Ex. 1.) Later, after issuance of a subpoena, petitioner filed a more detailed vaccination record that indicates petitioner received her flu vaccination in her right shoulder, opposite her alleged injury. (ECF No. 11; Ex. 8.)

After completing his medical review, respondent advised that he would litigate this case. (ECF No. 38.) He filed his Rule 4 Report on April 12, 2023. (ECF No. 39.) Respondent argued that (1) petitioner has not established that she received a covered vaccine in her left arm; (2) petitioner has not established a Table SIRVA both because she has prior neck and shoulder problems and because she has not established onset within 48 hours of vaccination, and (3) petitioner has not demonstrated causation-in-fact because her diagnosed cellulitis did not persist for six months and her allegation of a shoulder injury is not supported by medical theory or opinion. (*Id.* at 7-12.)

I urged the parties to consider informal resolution; however, respondent declined to discuss settlement. (ECF Nos. 43, 47.) I then ordered petitioner to file an expert report supporting her claim, but petitioner advised that a finding of fact regarding the site of her flu vaccine injection would facilitate her expert's opinion. (ECF No. 50.) Petitioner filed her motion for a finding of fact on January 10, 2024. (ECF No. 52.) Petitioner requests a finding that her flu vaccine was administered in her left arm. (*Id.*) Respondent filed his response on February 12, 2024. (ECF No. 53.) Respondent does not raise any objection to resolving the site of petitioner's injection on the existing record; however, he urges that petitioner's vaccine administration record be credited as to the injection site having been in petitioner's right arm. (*Id.*) Petitioner filed a reply on February 26, 2024. (ECF Nos. 54.)

In light of the above, I have determined that the parties have had a full and fair opportunity to develop the record on this issue and that, given the parties' assent, it is appropriate to resolve this issue on the existing record. *See* Vaccine Rule 8(d); Vaccine Rule 3(b)(2); *Kreizenbeck v. Sec'y of Health & Human Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020) (noting that "special masters must determine that the record is comprehensive and fully developed before ruling on the record"). Accordingly, petitioner's motion is now ripe for resolution.

## II.     Summary of Record Evidence

   a. Medical Records[3]

On February 12, 2020, petitioner was seen by her primary care provider. (Ex. 3, p. 18.) Her encounter occurred at 10:40AM. (*Id.*) Vitals were taken at 11:07AM and medications were updated as of 12:08PM. (*Id.* at 19-20.) The encounter record, which was signed at 12:46PM by P.A. Silva, confirms that both flu and pneumococcal vaccinations were administered during the encounter. (*Id.* at 21.) The medical records initially produced by the medical provider included only an "immunization series record" that was limited to noting the date of administration.[4] (*E.g.*, Ex. 1.)

The vaccine administration records ultimately produced by the medical provider indicate that P.A. Silva ordered a flu vaccination for petitioner on *February 26*, 2020, which was administered in petitioner's right deltoid at 11:19AM on *February 12*, 2020, by CMA Vega. (Ex. 8, p. 1.) The vaccine was a Flulaval Quadrivalent vaccine manufactured by Glaxo Smith Kline and had an expiration date of June 30, 2021. (*Id.*) The pneumococcal vaccine was ordered by P.A. Silva on February 12, 2020, and was administered in petitioner's left deltoid at 9:08AM by CMA Vega. (*Id.* at 2.) The pneumococcal vaccine was a Pneumovax 23 vaccine manufactured by Merck with an expiration date of December 22, 2020. (*Id.*)

On February 14, 2020, at 11:15AM, N.P. Swaney of the same medical group created record of a telephone encounter with petitioner. It reads in pertinent part: "Patient called saying she got the flu shot and pneumonia shot 2 days ago in the same arm. Now arm is very swollen, red, hot and she has a fever, feels horrible. Advised to go to UC or ER for evaluation, patient agrees to plan." (Ex. 5, p. 14.)

Less than an hour later, at 11:55AM, petitioner was triaged at Community Memorial Hospital. (Ex. 2, p. 19.) The history of present illness indicates that petitioner "presents for evaluation of worsening [left upper extremity] pain [status post] immunization shots into the [left upper extremity] since 2 days ago. She notes that she got an influenza and pneumonia shot on Wednesday of this week. The [patient] believes that she is having an adverse reaction to these immunizations." (*Id.*) She was admitted, diagnosed with cellulitis, and treated with antibiotics. She was discharged on February 15, 2020. (*Id.* at 6-7, 19-20.)

---

[3] Although the medical records have been reviewed and considered in their entirety, only those bearing most directly on the specific question of the site of petitioner's injection are discussed.

[4] The immunization series record reflects that both the flu and pneumococcal vaccines were administered on February 12. (Ex. 1.) These notations are repeated within several of petitioner's later encounter records under the heading of immunizations. (Ex. 7, p. 30 (4/27/2021); p. 33 (6/30/2020); p. 38 (2/26/2020).) Strangely, however, the record of petitioner's February 12, 2012 encounter includes an immunizations section that lists a single pneumococcal vaccination administered February 19, 2020 – one week in the future. (*Id.* at 41.)

Petitioner followed up with PA Silva on February 26, 2020. (Ex. 3, p. 14.) P.A. Silva recorded that petitioner "[s]tates [symptoms] started 2 days after she received flu and pneumococcal vaccines here in the clinic and developed redness and warmth at the injection sites." (*Id.*) P.A. Silva noted petitioner had improved after treatment but was still tender at the injection site. (*Id.* at 17.)

In later medical records, petitioner continued to consistently attribute her condition affecting her left arm and shoulder to both of her vaccinations. (Ex. 4, p. 26; Ex. 3, p. 10; Ex. 7, p. 28.) Although the fact of petitioner's vaccinations was not discussed at every medical encounter, I have not located any instance in which petitioner provided a history inconsistent with her flu vaccination having been administered in her left shoulder.

An undated record by an unidentified person in petitioner's primary care provider's office indicates as follows:

> Patient called wanting to get a copy of Immunization records stating that they were both given on the same arm. Tried to give her a copy of what was recorded and she did not want it because it did not have what she wanted. I tried to explain to her that this was from a year ago and supervisor (Erin RN) verified everything and everything was recorded correctly so there is nothing we could do. Patient then started yelling and swearing over the phone before I was able to finish explaining, she then hung up.

(Ex. 8, p. 3.)

  b. Petitioner's Affidavits and Photographs

Petitioner has filed four declarations in this case. (Exs. 6, 9, 20, 26.) Petitioner's first declaration describes the overall counter of her claim. She avers without elaboration that her February 12, 2020 vaccinations were both administered in her left arm. (Ex. 6, p. 1.) Her second affidavit specifically addresses the site of administration. (Ex. 9.) She avers as follows:

> Soon after Dr. Silva left the room at my February 12, 2020 visit, her nurse came in to give me the shots. I do not remember being asked whether I wanted them in my left or right shoulder, but I was positioned so my left side was facing the nurse. I do not know which shot was given first, but the nurse gave the first shot in my left arm, sort of in the middle of my upper arm and lower than my actual shoulder muscle. It was a little farther to the back of my arm than where the next shot was given. I took a picture when the swelling started at both spots and the first shot I got was the lower spot in the picture.
>
>  . . . I remember starting to change my position to give the nurse my right arm for the second shot, but the nurse said I didn't need to move, that

4

> she'd give it in the same arm. I asked if that was okay to give them both in the same arm because I didn't remember ever having two shots at once in the same arm. The nurse said something to the effect of "it's fine, we do it all the time."

(*Id.* at 1-2.)

Petitioner recounts that in early 2021, she returned to her primary care clinic to request her vaccination records. She was given two vaccination records that she did not agree were correct and she refused to take them until they were corrected. (Ex. 9, p. 2.) She reports that, in a follow up call with the nurse supervisor, she was told that "because the records are created when the shots are given, [the nurse supervisor] and the doctor wouldn't change the record." (*Id.* at 3.)

Petitioner's third and fourth declarations are largely irrelevant to this motion. However, in her third declaration, petitioner clarifies that the photographs she took of her arm were taken on her cell phone on the day she was hospitalized before she went to the hospital. However, she also took photos after her discharge. (Ex. 20, p. 2.)

There are four photographs in evidence in this case. Exhibit 11 depicts what appears to be a right upper arm (though petitioner asserts the photo is inverted (ECF No. 52, p. 11)). There is a large patch of redness on a large portion of the upper arm. There is also what appears to be a lump above the bicep within the upper portion of the reddened area. Without a baseline for comparison, the degree of swelling cannot be appreciated. Exhibit 12 is a substantially similar photo, though the angle and background are different. (Exhibit 12 shows an Amazon box in the background, which is relevant to petitioner's argument below.) It is not possible to specifically visualize any injection site in either photograph. Exhibits 17 and 18 appear to be duplicates of Exhibits 12 and 11 respectively, though zoomed in and including meta data indicating the photos were taken on February 15, 2020.

### III. Party Contentions

Petitioner asserts that there are several reasons for concluding that her vaccination record as filed at Exhibit 8, *i.e.*, the version that specifies an injection in the right shoulder, should not be treated as a presumptively reliable contemporaneous medical record. (ECF No. 52, pp. 6-8.) Petitioner stresses that the record at Exhibit 8 was only belatedly produced by the medical provider on June 21, 2021, after receipt of a subpoena, despite an earlier production of records. Thus, petitioner questions whether it was contemporaneously created. (*Id.* at 7.) Petitioner notes that the record contains several discrepancies. First, the record reflects an "order date" for the vaccination of February 26, 2020, which is two weeks after the documented administration date of February 12, 2020. (*Id.* (citing Ex. 8, p. 1).) This is in contrast to the record of the pneumococcal vaccination administered at the same time for which these two dates match. (*Id.* (citing Ex. 8, p. 2).) Second, the time of administration for the two vaccines is more than two hours apart, despite the vaccines having been

administered at the same encounter. (*Id.*) Third, the expiration date for the flu vaccine is likely incorrect in that it reflects expiration at the conclusion of the flu season following the year for which petitioner was vaccinated (*i.e.*, it reflects an expiration in 2021, rather than 2020). (*Id.* at 7-8 (citing Elisabeth M. Hesse et al., *Administration of Expired Injectable Influenza Vaccines Reported to the Vaccine Adverse Event Reporting System – United States, July 2018-March 2019*, 68 MORBIDITY & MORTALITY WKLY. REP. 529 (2019) (Ex. 32)).)

Petitioner also asserts that her contemporaneous treatment records support her assertion that she received both her flu and pneumococcal vaccines in her left arm. (ECF No. 52, pp. 8-10.) Specifically, petitioner cites the telephone record from February 14, 2020, just two days post-vaccination, that states: "Petitioner called saying she got the flu shot and pneumonia shot 2 days ago in the same arm. Now arm is very swollen, red, hot and she has a fever, feels horrible." (Ex. 5, p. 14.) The same day, petitioner sought care in person and the history of present illness recorded that she presented for "evaluation of worsening LUE pain s/p immunization shots into the LUE since 2 days ago. She notes that she got an influenza and pneumonia shot on Wednesday of this week." (Ex. 2, p. 19.) (Note the use of the plural – "immunization *shots* into the LUE.") Petitioner cites several additional records that appear to address her vaccinations together in the context of assessing her injury. (ECF No. 52, pp. 8-10 (citing Ex. 2, p. 9; Ex. 3, pp. 10, 13-14; Ex. 4, p. 27; Ex. 7, p. 36; Ex. 21, p. 37; Ex. 23, p. 49).) Petitioner has also provided affidavits averring that she received her flu vaccine in her left shoulder and detailing her recollection that she questioned whether she should receive both vaccinations in the same shoulder and was assured that it was okay. (*Id.* at 10-11 (citing Exs. 6, 9, 20).) Petitioner has filed several photographs depicting her alleged condition. (Exs. 11-12, 17-18.)[5]

As respondent frames it, however, the question at issue on this motion "hinges on whether the submitted vaccination record – which indicates that the flu vaccine was given in the right deltoid – should be credited over petitioner's account." (ECF No. 53, p. 5.) Respondent asserts that the vaccination record at Exhibit 8 is "strong, unequivocal evidence of the site of petitioner's flu vaccination," stressing that Exhibit 8 also includes confirmation that the provider "verified everything and everything was recorded correctly[.]" (*Id.* at 6 (alteration in original) (quoting Ex. 8, p. 3).) Regarding petitioner's challenges to the reliability of Exhibit 8, respondent contends that the recorded time for both vaccination is consistent with recorded time of petitioner's encounter, notwithstanding that they are two hours apart. (*Id.*) Respondent charges that petitioner's assertion regarding the expiration date of the vaccination is speculative. (*Id.* at 7, n.2.) Respondent offers no explanation for the incorrect order date for the flu vaccination, but argues that this error "provides no basis to deduce that the record is

---

[5] Respondent and petitioner have a disagreement with respect to whether the photographs show petitioner's left or right shoulder. Respondent argues the photos appear to show a right shoulder. (ECF No. 53, p. 7.) Petitioner argues, however, that the photographs are inverted. (ECF No. 52, p. 11.) In particular, petitioner observes that the logo on the Amazon shipping box in the background in some of the photographs is backward. (*Id.*) Because I did not find the photographs helpful in resolving this motion, it is not necessary to resolve this disagreement. I do note, however, that the medical records clearly reflect that petitioner suffered a left shoulder cellulitis.

inaccurate as to the site of administration." (*Id.* at 7.)  Respondent argues the subsequent treatment records are not trustworthy because they only reflect petitioner's own account, unverified by those taking her medical history.  (*Id.*)  Respondent suggests petitioner's account should be viewed as unreliable because she tested positive for certain drugs.  (*Id.* (citing Ex. 2, p. 6).)  Respondent also disputes that the photographs are useful in proving which vaccine(s) petitioner received in her affected arm.  (*Id.*)

In reply, petitioner stresses that, her February 12, 2020 medical encounter occurred at 10:40AM, with her initial vitals having been recorded at 11:07AM.  (ECF No. 54, p. 4.)  She notes that, even if the 11:19AM timestamp for the flu vaccine is feasible, the 9:08AM timestamp for the pneumococcal vaccine, falling an hour and a half before petitioner's encounter, is implausible.  (*Id.*)  This suggests recordkeeping inconsistencies.  Petitioner also challenges the accuracy of the later verification respondent cites (*i.e.*, Ex. 8, p. 3).  Petitioner stresses it was not contemporaneous and that the supervisory nurse (Erin RN) that purported to verify the record did not have any direct knowledge of the vaccine administration and there's no description of the means of verification.  (*Id.* at 5-6.)  Petitioner acknowledges the photographs of record are not direct proof of the injection site of the vaccination at issue, but contends they do show that petitioner had two distinct areas of upper arm swelling, which would tend to corroborate two injection sites in that arm.  (*Id.* at 7.)  Petitioner asserts that the drug test referenced by respondent is not reliable (*Id.* at 8 (citing Ex. 2, p. 45)) and that nothing in the medical record calls petitioner's memory or the reliability of her history into question (*Id.* (citing Ex. 2, p. 9)).  None of the detected substances were illegal and petitioner discussed it with her physicians.  (*Id.* at 8-9 (citing Ex. 2, pp. 6, 9, 45).)  Petitioner charges that respondent's drug use argument "is meant to exploit bias.  It is not evidence."  (*Id.* at 9.)

### IV.   Legal Standard

Pursuant to Vaccine Act § 300aa-13(a)(1)(A), a petitioner must prove their claim by a preponderance of the evidence.  A special master must consider the record as a whole, but is not bound by any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record.  § 300aa-13(b)(1).  However, the Federal Circuit has held that contemporaneous medical records are ordinarily to be given significant weight due to the fact that "[t]he records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions.  With proper treatment hanging in the balance, accuracy has an extra premium.  These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Thus, where medical records are clear, consistent, and complete, they should be afforded substantial weight.  *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *19 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).  However, this rule is not absolute.  Afterall, "[m]edical records are only as accurate as the person providing

the information." *Parcells v. Sec'y of Health & Human Servs.*, No. 03-1192V, 2006 WL 2252749, at *2 (Fed. Cl. Spec. Mstr. July 18, 2006). In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." 2005 WL 6117475, at *19 (quoting *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992)). Importantly, however, "the absence of a reference to a condition or circumstance is much less significant than a reference which negates the existence of the condition or circumstance." *Murphy*, 23 Cl. Ct. at 733 (quoting the decision below), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992).

When witness testimony is offered to overcome the weight afforded to contemporaneous medical records, such testimony must be "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). Further, the Special Master must consider the credibility of the individual offering the testimony. *Andreu ex rel. Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993). In determining whether to afford greater weight to contemporaneous medical records or other evidence, such as testimony, there must be evidence that this decision was the result of a rational determination. *Burns ex rel. Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993). The special master is obligated to consider and compare the medical records, testimony, and all other "relevant and reliable evidence" contained in the record. *La Londe v. Sec'y Health & Human Servs.*, 110 Fed. Cl. 184, 204 (2013) (citing § 300aa-12(d)(3); Vaccine Rule 8), *aff'd sub nom. LaLonde v. Sec'y of Health & Human Servs.*, 746 F.3d 1334 (Fed. Cir. 2014); *see also Burns*, 3 F.3d at 417.

The factual question of injection site does arise repeatedly, especially in the context of shoulder injuries related to vaccine administration ("SIRVA"). In that context, I have previously explained that

> it is important that special masters recognize that vaccine administration records can sometimes be incorrect and that they should not be accepted reflexively. However, that is a far cry from presuming they are to be distrusted generally or without good reason. Vaccine administration records are still, after all, contemporaneous medical records.

*Anderson v. Sec'y of Health & Human Servs.*, No. 20-195V, 2023 WL 2237320, at *10 (Fed. Cl. Spec. Mstr. Feb. 2, 2023). Nonetheless, I have also previously observed that "treatment records are probative on this issue because they are contemporaneous documents recorded by disinterested persons memorializing the fact that petitioner at that time understood her vaccination to have been administered in her [affected] shoulder, believed that to be relevant to assessing her condition, and sought treatment accordingly." *Hanna v. Sec'y of Health & Human Servs.*, No. 18-1455V, 2021 WL 3486248, at *9 (Fed. Cl. Spec. Mstr. July 15, 2021); *see also Mezzacapo v. Sec'y of Health & Human Servs.*, No. 18-1977V, 2021 WL 1940435, at *7 (Fed. Cl. Spec. Mstr.

8

Apr. 19, 2021). Thus, there is an established track record of prior cases in which vaccine injection site has been considered based on the totality of evidence, even where the administration record itself conflicts with petitioner's allegation. *Christensen v. Sec'y of Health & Human Servs.*, No. 19-0007V, 2022 WL 1020386 (Fed. Cl. Spec. Mstr. Feb. 28, 2022); *Syed v. Sec'y of Health & Human Servs.*, No. 19-1364V, 2021 WL 2229829 (Fed. Cl. Spec. Mstr. Apr. 28, 2021); *Irwin v. Sec'y of Health & Human Servs.*, No. 19-956V, 2021 WL 5504701 (Fed. Cl. Spec. Mstr. Oct. 18, 2021); *Baker v. Sec'y of Health & Human Servs.*, No. 19-1771V, 2020 WL 6580192 (Fed. Cl. Spec. Mstr. Oct. 9, 2020); *Boyd v. Sec'y of Health & Human Servs.*, No. 19-1107V, 2021 WL 4165160 (Fed. Cl. Spec. Mstr. Aug. 12, 2021).

### V.     Discussion

While petitioner's vaccination record includes a notation that the vaccination was administered in her right shoulder, opposite her pneumococcal vaccination and her alleged injuries (Ex. 8, p. 1), petitioner's contemporaneous treatment records, beginning just two days post-vaccination, explicitly and consistently indicate that both vaccinations were administered in petitioner's left arm. (*E.g.*, Ex. 5, pp. 10, 18; Ex. 2, p. 19.) These records warrant considerable weight in this case, not only because they were created in the context of diagnosis and treatment, but also given how explicit these particular records are with respect to administration site and how soon after vaccination they were recorded. While respondent is correct that these medical records ultimately reflect petitioner's own report of her history, this has always been part and parcel of this program's frequent reliance on contemporaneous medical records as trustworthy evidence. *Cucuras*, 993 F.2d at 1528 (explaining that "[t]he records contain information *supplied to* or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." (emphasis added)); *accord James-Cornelius ex rel. E.J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (observing that "for many medical symptoms or events . . . [m]edical records related to those symptoms would likely be based on the statements of those who experienced them"). Although respondent seeks to challenge petitioner's credibility based on drug use, he has not substantiated either that she was actually impaired when she provided these histories or that she had any drug-related motivation to be untruthful.

Moreover, while I do also give petitioner's vaccination record some weight as a contemporaneous record, petitioner is persuasive in contending that her vaccination record falls short of being the "strong, unequivocal" evidence respondent asserts. To the extent petitioner argues the vaccination record at Exhibit 8 is later created and effectively fraudulent, that is speculative on this record. However, petitioner is persuasive in observing that the document contains at least one facially obvious error as well as other errors suspicious for unreliable recordkeeping. Specifically, the flu vaccine at issue clearly would not have been ordered two weeks after it was administered. (Ex. 8, p. 1; *see also supra* note 4.) The points petitioner raises regarding the timestamps and expiration date are also potentially suggestive of unreliable recordkeeping, even though they are not unambiguously incorrect like the

9

order date. Without treating it as dispositive, this internal inconsistency does reduce the weight that can be assigned to this record vis-à-vis the details of administration. *Lowrie*, 2005 WL 6117475, at *19. Although the identification of some errors does not lead invariably to the conclusion that other details were likewise incorrectly recorded, respondent is not persuasive in suggesting that such errors are wholly immaterial. As explained above, medical records are only as reliable as the person providing the information. *Parcells*, 2006 WL 2252749, at *2. It makes no sense to treat the injection site notation in this case as sacrosanct when the same record otherwise includes at least one simple, yet glaring, error that calls into question the attention to detail of the person that created the record, especially but not only because the contemporaneous treatment records for petitioner's cellulitis so strongly suggest that the injection site notation is incorrect.

Respondent stresses the accompanying record within Exhibit 8 wherein it is explained that petitioner sought her vaccination record and was told "that this was from a year ago and supervisor (Erin RN) verified everything and everything was recorded correctly so there is nothing we could do." (ECF No. 53, p. 6 (citing Ex. 8, p. 3).) There are several reasons this does not persuasively bolster the reliability of the original record. First, the assurance that "everything was recorded correctly" rings hollow in light of the observations discussed above. Second, as petitioner stresses, the verification is not contemporaneous to events. In fact, the author of this subsequent record seemingly disclaims any basis for addressing the accuracy of the record by stressing that "this was from a year ago." Third, although the supervisory nurse purported to verify the information, she was not the documented administrator of the vaccination and there is no explanation of her efforts to verify the information in the absence of any direct knowledge.

Finally, I note in the interest of completeness that the photographs submitted by petitioner are not helpful in resolving this issue. (Exs. 11-12, 17-18.) Even if the photographs do show a left arm cellulitis, and even if petitioner ultimately establishes that the cellulitis was vaccine-caused, there is no dispute in this case that petitioner at a minimum received her February 12, 2020 pneumococcal vaccine in her left deltoid. Thus, the photographs do not readily evidence whether petitioner *additionally* received her flu vaccine in the same arm. Although petitioner asserts that her condition includes two areas of swelling consistent with two injection sites, there is no medical opinion available to support that such a pattern necessarily implicates two puncture wounds. In any event, none of the photographs is sufficient to make out any injection site, and I do not discern two distinct areas of cellulitis as asserted by petitioner.

## VI. Conclusion

Balancing all of the above, and based on the record as a whole, I conclude that the record evidence preponderates in favor of a finding that petitioner's February 20, 2012 flu vaccine was administered in her left shoulder.

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master
